FILED
2017 Sep-28 PM 03:41
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| **QUALITY EQUIPMENT LEASING, LLC, d/b/a QUALITY EQUIPMENT SALES and CELADON TRUCKING SERVICES, INC.,**<br><br>Plaintiffs,<br><br>vs.<br><br>**ALABAMA LOGISTICS, LLC, et al.,**<br><br>Defendants. | Civil Action Number<br>**2:17-cv-00127-AKK** |

### **MEMORANDUM OPINION**

This case arises out of a series of leasing agreements for trucks and trailers between Quality Equipment Leasing, LLC d/b/a Quality Equipment Sales and Celadon Trucking Services, Inc. (the "Plaintiffs/Lessors") and Alabama Logistics, LLC. Alabama Logistics defaulted on the leases and subsequently failed to return three leased trailers to the Plaintiffs. Those trailers were removed from the parking lot of the Alabama Logistics' headquarters building by Gregory Phillips, and Southern Property Management, LLC ("SPM") in October 2016. Phillips purportedly denied Alabama Logistics further access to the trailers after removing them from the company's parking lot. The Plaintiffs filed suit to recover the

1

missing property, bringing claims for both breach of contract against Alabama Logistics, and conversion against Phillips and SPM. Over the course of this litigation, the Plaintiffs have regained possession of all but one of the purportedly converted trailers,[1] and have now filed a motion for summary judgment, doc. 26, that is ripe and ready for review. After carefully considering the evidence before the court, and the Plaintiffs' brief, the court finds that the Plaintiffs' motion is due to be granted.

## **II. STANDARD OF REVIEW**

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

"The evidence of the non-movant is to be believed and all justifiable inferences are to be drawn in [her] favor." *Id.* at 255. It is expressly not the role of the court to "weigh conflicting evidence or to make credibility determinations." *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996); *see also Anderson*, 477 U.S. at 255 (explaining "[c]redibility determinations, the weighing

---

[1] Before filing suit, the Plaintiffs recovered most of the leased equipment–only the three trailers remained outstanding. Doc. 26 at 3. Subsequently, the Plaintiffs requested and received a Writ of Seizure enabling the recovery of two of the three trailers. *Id.*

2

of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge").

However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (per curiam) (citing *Bald Mountain Park, Ltd. v. Oliver*, 863 F.2d 1560, 1563 (11th Cir. 1989)). "[A] . . . 'scintilla of evidence in support of the nonmoving party will not suffice to overcome a motion for summary judgment.'" *Melton v. Abston*, 841 F.3d 1207, 1219 (11th Cir. 2016) (quoting *Young v. City of Palm Bay*, 358 F.3d 859, 860 (11th Cir. 2004)). Instead, if "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial," and summary judgment is appropriately granted. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

Given that the Defendants have not responded to Plaintiffs' motion, the court notes that pursuant to Rule 56(e) of the Federal Rules of Civil Procedure "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact," summary judgment is appropriate if the facts show "the movant is entitled to it." FED. R. CIV. P. 56(e)(3).

## III. FACTS

The Plaintiffs began leasing trucks and trailers to Alabama Logistics in July 2015. Doc. 26-2 at 3. Overall, four lease agreements involving a total of five trucks and five Benson flatbed trailers were signed.[2] All the lease agreements contained uniform language explaining that a default occurs when, among other things, "Lessee fails to pay when due any rent or any other payment under this Agreement." *Id.* at 8. The lease agreements also uniformly provided that, in the event of a default, the Lessor may "[t]erminate the Agreement . . . and require Lessee . . . to promptly return the Vehicles;" "[d]eclare [all] payments . . . due and payable by acceleration . . . as liquidated damages;" and require the payment of "expenses incurred by Lessor in enforcing its rights . . . [including] reasonable attorney's fees." *Id.* at 8–9.

In the fall of 2016, Alabama Logistics ceased making payments and defaulted on all four lease agreements. Doc. 26 at 3. Plaintiffs subsequently exercised their rights to terminate those agreements, and by October 31, 2016, all four leases had been terminated. Doc. 26-7 at 3. Prior to commencing this action, the Plaintiffs were able to recover almost all of their equipment, with the exception

---

[2] The four lease agreements are: (1) a lease for two trucks with payments beginning on August 17, 2015; (2) a second lease for two trucks with payments beginning on August 1, 2016; (3) a lease for five Benson flatbed trailers with payments beginning on August 1, 2016; and (4) a lease for a single truck with payments beginning on August 15, 2016. Docs. 26-2 at 2; 26-3 at 2; 26-4 at 2; 26-5 at 2.

of three of the Benson flatbed trailers leased to Alabama Logistics on June 17, 2016. Doc. 26 at 3.

Greg Phillips, the owner of SPM, held the lease for Alabama Logistics' headquarters, where the trailers were kept. Doc. 26-9 at 5. Phillips asserts that the owner of the building warned Phillips that he would seize the trailers and other heavy equipment stored at the facility if Alabama Logistics continued to leave the vehicles in the building's parking lot. *Id.* at 6. When Phillips was unable to contact an Alabama Logistics representative, he moved the equipment, including the trailers, on his own. *Id.* at 6–7. Phillips testified that he did not have a lien over the equipment, and that he does not seek to claim any other form of ownership interest in the property. *Id.* at 11. Phillips concedes that Alabama Logistics never gave him permission to remove the trailers from the company's facility. *Id.* at 5–6, 10.

Over the course of this litigation, all three of the Defendants have consented to the issuance of a Writ of Seizure enabling the Plaintiffs to recover the missing trailers. Docs. 20; 22. Pursuant to these consent agreements, the court issued a Writ of Seizure, doc. 23, for the three unreturned trailers on March 14, 2017. One

trailer, valued at $28,000, remains unrecovered as of August 9, 2017. Doc. 26 at 7.[3]

## IV. DISCUSSION

### A. Breach of Contract

In Alabama, to prevail on a breach of contract claim, the plaintiff must prove: "(1) the existence of a valid contract binding the parties in the action, (2) [the plaintiff's] own performance under that contract, (3) the defendant's nonperformance, and (4) damages." *S. Med. Health Sys., Inc. v. Vaughn*, 669 So. 2d 98, 99 (Ala. 1995). Here, the undisputed record evidence shows that all four of the required elements are met. There is no dispute that the lease agreements in question were valid, that the Plaintiffs' provided the trucks and trailers as agreed, and that Alabama Logistics failed to make the required payments under the lease. Indeed, Alabama Logistics entered into a consent order admitting that the Plaintiffs are the rightful owners of the three missing trailers pursuant to the parties' lease agreement, doc. 20 at 2, a tacit acknowledgement of the leases' validity. Alabama Logistics also does not dispute that its failure to make the required rental payments, and its failure to return leased equipment when requested, damaged the

---

[3] Phillips' testimony clearly indicates that he did not keep track of the trailers, and that he does not know where the third trailer is now. Doc. 26-9 at 11. Alabama Logistics' owner, Douglas Bates, is similarly unaware of the current location of the missing trailer. Doc. 26-8 at 25–26.

Plaintiffs. Accordingly, summary judgment is granted in favor of the Plaintiffs with respect to their breach of contract claim against Alabama Logistics.

The Plaintiffs request both actual and liquidated damages flowing from the breached lease agreements in the same amount, $74,583.75.[4] The basic rule for contract damages in Alabama is that "'the damages awarded in an action for breach of contract should be an amount sufficient to return the nonbreaching party to the position [she] would have occupied had the breach not occurred.'" *HealthSouth Rehab. Corp. v. Falcon Mgmt. Co.*, 799 So. 2d 177, 183 (Ala. 2001). Such damages must be "the natural and proximate consequences of the breach and such as may reasonably be supposed to have been within the contemplation of the parties at the time the contract was made." *Aldridge v. Dolbeer*, 567 So. 2d 1267, 1269–70 (Ala. 1990) (quoting *Winslett v. Rice*, 272 So. 2d 25, 31 (Ala. 1960)).

   *1. Plaintiffs are Entitled to Lost Rental Payments*

Had Alabama Logistics not breached the lease agreements, the Plaintiffs would have continued receiving rental payments for the duration of each lease. So, the appropriate measure of damages is simply for Alabama Logistics to make the rental payments it would have been obligated to pay until the leases were

---

[4] This amount is calculated based on the monthly rental payments owed under each lease between when payments began and when the lease was terminated, less any rental payments Alabama Logistics made prior to termination. Doc. 26 at 4.

terminated, an amount of $74,583.75, thereby placing the Plaintiffs in the position they would have occupied absent the breach.

*2. Plaintiffs are not Entitled to Liquidated Damages*

However, the Plaintiffs' request for liquidated damages under the contract is denied. The amount requested as liquidated damages exactly duplicates the amount requested as actual damages because the Plaintiffs are not seeking to recover the full accelerated value of the leases at the time of default. Instead, the Plaintiffs seek only liquidated damages covering the time between default and termination of the lease agreements, and the lease agreements provide that liquidated damages are calculated in the same way as actual damages, i.e. via determining the value of the rental payments due and not paid under the lease. Docs. 26 at 5; 26-4 at 7. Consequently, an award of liquidated damages, in addition to actual damages, would amount to an impermissible double recovery for the same injury. *See Turquoise Props. Gulf, Inc. v. Overmyer*, 81 So. 3d 1250, 1255 n.3 (Ala. 2011) (holding "Alabama law . . . does not countenance double recoveries").

Moreover, the liquidated damages provision at issue here is unenforceable under Alabama law, which only authorizes liquidated damages if they do not otherwise qualify as a penalty. *See Sutton v. Epperson*, 631 So. 2d 832, 834–35 (Ala. 1993). Three criteria govern this determination: (1) "the injury caused by the

breach must be difficult or impossible to accurately estimate;" (2) "the parties must intend to provide for damages rather than for a penalty;" and (3) "the sum stipulated must be a reasonable pre-breach [estimate] of the probable loss." *Camelot Music, Inc. v. Marx Realty & Improvement Co., Inc.*, 514 So. 2d 987, 990 (Ala. 1987). If "the liquidated damages clause fails to meet any one of the three criteria, it must fail as a penalty." *Sutton*, 631 So. 2d at 836.

In this instance, the liquidated damages clause fails two of the three criteria. First, as shown by the precise damage calculations the Plaintiffs provided, the injury caused by the breach of the lease agreements is not "difficult or impossible to accurately estimate." *Camelot Music*, 514 So. 2d at 990. Second, the liquidated damages provision in each lease agreement enables the acceleration of the remainder of the payments due for the entire life of the lease, a total amount in this case of $835,034.40. Doc. 26 at 5. As Plaintiffs implicitly admit here by not seeking the recovery of all available liquidated damages under the contract, the sum stipulated is not "a reasonable pre-breach [estimate] of the probable loss." *Camelot Music*, 514 So. 2d at 990. Accordingly, the liquidated damages provision qualifies as a penalty and is "void as against public policy." *Id.*

### 3. *Plaintiffs are Entitled to the Fair Market Value of the Missing Trailer*

The court further notes that the lease agreements expressly obligate Alabama Logistics to return leased equipment to the Plaintiffs in the event of a default. Doc.

26-4 at 7. It is undisputed that Alabama Logistics failed to return one trailer valued at $28,000 despite the Plaintiffs' repeated demands. Doc. 26-5 at 4–5. Therefore, because Alabama Logistics has not filed any responsive pleadings or raised any affirmative defenses to this action, the Plaintiffs are entitled to breach of contract damages in the amount of $28,000—the fair market value of the trailer, and the amount necessary to place the Plaintiffs in the position they would have been in had the contractual obligation to return the trailer been performed.

### 4. *Plaintiffs are Entitled to Reasonable Attorney Fees*

Finally, the lease agreements expressly allow for the recovery of reasonable attorneys' fees, as well as other costs, incurred in the course of pursuing the Plaintiffs' rights under the contract. Doc. 26-4 at 7. The court finds that this provision is enforceable, and accordingly awards reasonable attorneys' fees and costs to the Plaintiffs, the prevailing party in this action. The court agrees with the Plaintiffs that 20% of the total damages recovered pursuant to the breach of contract claim represents a reasonable fee. Doc. 26-10 at 3. Therefore, because the court has found that Plaintiff is entitled to $102,583.75 in total damages flowing from Alabama Logistics' breach, the Plaintiffs are entitled to an award of $20,516.75 in attorneys' fees and costs. The court will enter a judgment against Alabama Logistics for the sum of $123,100.50.

## B. Conversion

A conversion consists of the "wrongful exercise of dominion over property in exclusion or defiance of a plaintiff's rights, where said plaintiff has general or special title to the property or the immediate right to possession." *Ott v. Fox*, 362 So. 2d 836, 839 (Ala. 1978). To prevail, a plaintiff must present evidence of either "a wrongful taking, an illegal assumption of ownership, an illegal use or misuse of another's property, or a wrongful detention or interference with another's property." *Crown Life Ins. Co. v. Smith*, 657 So. 2d 821, 823 (Ala. 1994) (citing *Covington v. Exxon Co.*, 551 So. 2d 935, 938 (Ala. 1989)).

Alabama allows the recovery of punitive damages for conversion "when the conversion is committed in known violation of the law and of owners' rights, or with circumstances of insult or malice." *Coffee Gen. Hosp. v. Henderson*, 338 So. 2d 1022, 1024 (Ala. Civ. App. 1976). And, significant here, Alabama recognizes the general common law rule that a "lack of knowledge of [the] owner's rights or [the] good faith of defendant" is not a defense to a conversion claim. *Universal C. I. T. Credit Corp. v. Weeks*, 242 So. 2d 682, 685 (Ala. Civ. App. 1970); *see also United States v. Lester*, 541 F.2d 499, 502 n.4 (5th Cir. 1976) (explaining that "[a]t common-law, in a civil tort action for conversion, the intent, good faith or mistake on the part of the converter [is not] relevant").

There is no dispute that the Plaintiffs had the immediate right to possess the trailers after Alabama Logistics' default, and that the Plaintiffs hold proper title to the leased equipment, including the three trailers allegedly converted by Phillips and SPM. Alabama Logistics' part-owner, Douglas Bates, testified that Phillips removed equipment, including the trailer that the Plaintiffs have yet to recover, from Alabama Logistics' headquarters without permission or, for that matter, any communication at all. Doc. 26-8 at 19–20. Indeed, Bates explicitly testified that Phillips "stole" the trailers from Alabama Logistic in October 2016, around the same time Alabama Logistics defaulted on its lease agreements with the Plaintiffs. *Id.* at 22, 24.[5]

Bates asserts that he was unable to recover the trailers despite his efforts. *Id.* at 20. Moreover, despite their demands, the Plaintiffs have yet to recover the third trailer from Phillips. Doc. 26 at 7. Whether Phillips acted in a good faith attempt to preserve the trailers from the owner of the Alabama Logistics' headquarters building, as he asserts, is irrelevant. Doc. 26-9 at 6. The undisputed evidence reflects Phillips interfered with the Plaintiffs' property by moving and storing it without permission, and thereafter by failing to return the property to either the

---

[5] Phillips, on the other hand, testified that he took the equipment in question sometime around March 2016. Doc. 26-9 at 5–6. This contention is not supported by the record given that the lease agreement for the trailers was not signed until June 2016. Doc. 26-4 at 2. Accordingly, the court determines that Phillips converted the trailers in October 2016 pursuant to Bates' testimony. *See Singletary v. Vargas*, 804 F.3d 1174, 1183 (11th Cir. 2015) (noting that "when the non-movant's assertion is 'so utterly discredited' by the record" it need not be believed on summary judgment).

12

Plaintiffs or Alabama Logistics. *Id.* at 5–6, 10. Accordingly, summary judgment is appropriately granted in favor of the Plaintiffs with respect to their conversion claim against Phillips and SPM.

"[T]he measure of damages for the conversion of personal property is the value of the property as of the date of the conversion; or the value of the property at any time between the date of the conversion and the trial, whichever is greater, with interest at the rate of six percent (6%) per annum from the date of the conversion." *Edwards v. Vanzant*, 492 So. 2d 990, 994–95 (Ala. 1986) (quotation omitted).[6] The subsequent return of converted personal property serves to mitigate damages, but it does not defeat an action in conversion. *See Roebuck Auto Sales, Inc. v. Wallace*, 301 So. 2d 546, 549 (Ala. 1974).

As noted previously, the Plaintiffs still have not recovered one of the converted trailers. Accordingly, Plaintiffs are entitled to the value of the property, at the date of conversion, $28,000, with interest at the rate of 6% per annum, beginning in October 2016 when the conversion occurred. In this context, the court notes that Alabama does not permit double recoveries and adheres to the general rule that "there can be only one satisfaction" for the same injury. *Wilbourn v. Ray*, 603 So. 2d 969, 972 (Ala. 1992) (quoting *McClendon v. City of Boaz*, 395

---

[6] Plaintiffs argue that the correct measure of damages is the reasonable rental value of the property for the period of the conversion, but the Alabama Supreme Court has expressly repudiated that view. *See Edwards*, 492 So. 2d at 995 (explaining the rental value measure of damages is for actions in "statutory detinue" not conversion). Accordingly, the Plaintiffs are not also entitled to receive the rental value of the not-yet-recovered trailer.

So. 2d 21, 26 (Ala. 1981)). So, although the Plaintiffs may recover the value of the still-missing trailer via their breach of contract claim or their conversion claim, once a joint defendant satisfies the judgment the other defendant is discharged. *See id.*

The other two converted trailers, presumably also valued at $28,000, were returned to the Plaintiffs pursuant to this court's Order of March 2017. Doc. 26 at 6–7. While the standard measure of damages is the value of the converted property, the subsequent return of the converted property serves to mitigate damages. *Wallace*, 301 So. 2d at 549. In essence, the return of the property to the Plaintiffs converted their conversion action into one for loss of use, or "statutory detinue," and accordingly the "standard for recovery [is set] as the property's rental value if such was known." *Johnson v. U-Haul of S. Ala., Inc.*, 357 So. 2d 665, 667 (Ala. Civ. App. 1978). Consequently, the court finds that loss-of-use damages in the amount of the fair monthly rental value of the two trailers, $536.52 each, is appropriate for the six month period, October 2016 until March 2017, the trailers were wrongfully held by Phillips. Doc. 26 at 2. Thus, the Plaintiffs are entitled to $6,438.24 in loss-of-use damages.

The court declines to award punitive damages in this case, because the evidence suggests Phillips was acting in good-faith to preserve the trailers when he converted them. Doc. 26-9 at 6. The Plaintiffs have failed to show that Phillips

14

acted with malice or otherwise in known violation of the law, and have thus failed to carry their evidentiary burden with respect to punitive damages.

## V. CONCLUSION AND ORDER

For the foregoing reasons, Plaintiffs' Motion for Summary Judgment, doc. 26, is due to be **GRANTED**.

**DONE** the 28th day of September, 2017.

*[signature: Abdul Kallon]*
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE